# Tucker *et al. v.* Adams.

## *Action on Attachment Bonds.*

1. " *Cause of attachment;*" *what not issuable in attachment suit.* — The cause for which an attachment issues, which cannot be made an issuable fact in the attachment suit, is not the relation existing between the plaintiff and defendant, whether it be that of landlord and tenant, or that of debtor and creditor — nor is it the existence of the debt averred.

2. *Same.* — The cause of attachment is the state of facts averred as entitling the party to the remedy. In the case at bar, the cause of attachment was the removal from the rented premises of a portion of the crop without payment of rent, &c. That the crop had not been removed, could not be made an issue in the attachment suit.

3. *Attachment bond; what breach of.* — The non-existence of the debt for which the attachment issues is a breach of the attachment bond, entitling the defendant to recover in a suit thereon the damages sustained.

4. *Landlord and tenant; what does not create relation of.* — The relation of landlord and tenant does not exist between vendor and vendee, where the vendee enters into possession under an executory contract of purchase, and makes default in the payment of the purchase-money ; nor does such default entitle the vendor to elect a rescission of the contract, and treat the vendee as a tenant liable for rent.

5. *Attachment for rent; what statute contemplates.* — The statute authorizing an attachment for rent contemplates a tenancy, from year to year, springing out of contract.

APPEAL from Circuit Court of Henry.

Tried before Hon. J. McCaleb Wiley.

Appellee Adams brought suit against appellants, as sureties, <span>Vol. lii.</span>

[Tucker v. Adams.]

upon an attachment bond which they and their principal, James Olive, executed on the 13th day of October, 1869, assigning as breaches that the attachment was wrongfully sued out, and that they had failed well and truly to prosecute it.

The writ was issued on the ground that Adams was justly indebted to Olive in the sum of four hundred dollars for rent, for the year 1869, and that without paying rent he had removed a portion of crops grown thereon, without Olive's consent. Shortly after the levy, the attachment was quashed by the circuit court on the ground that " the attachment was not directed to be levied on the crops grown on the land rented, and because it does not show that the relation of landlord and tenant existed ; " and the corn and cotton attached was then restored to Adams.

The proof shows that in the year 1865 Olive sold Adams a tract of land, took his promissory notes therefor, put him in possession, giving him a bond for titles on payment of the purchase-money. At and before the attachment issued, the last note, one half of the purchase-money, was past due, and Adams had never received any deed. He was in possession when the attachment was levied, and had before the attachment issued removed a portion of the crops grown on the land without Olive's consent and without paying rent.

This was substantially all the evidence. The court, on plaintiff's request, charged the jury, " if they believed from the evidence that the attachment was sued out on the ground that the relation of landlord and tenant existed between Adams and Olive, that then the attachment was wrongfully sued out. The defendants excepted to the giving of this charge, and requested five written charges, which were refused, and to which refusals exception was duly reserved. The first of these charges instructed the jury to find for the defendant, if the attachment was sued out on the ground that Adams had removed a portion of the crops grown on the land, without payment of rent, and without Olive's consent, if they found these facts to be true. The second and third charges asserted Olive's right to treat Adams as his tenant, upon the facts in evidence, and to attach for rent upon removal of crops grown on the lands without Olive's consent, before paying rent. The fourth charge instructed the jury that it was immaterial whether Adams was Olive's tenant ; that even if he were not, this was no ground on which to base a verdict against defendants. The fifth charge instructed the jury, if they believed the evidence, to find for the defendants. The charge given, and the refusals to charge as requested, are now assigned as error.

W. C. OATES, for appellant. — Adams having long failed to

[Tucker *v.* Adams.]

perform his contract, his vendor had the election to treat him either as tenant, and recover for use and occupation, or as a trespasser, and eject him by suit. *Seabury* v. *Stuart*, 22 Ala. 207 ; *Gould* v. *Thompson*, 4 Met. 224 ; 6 N. H. 251 ; *Woodbury* v. *Woodbury*, 47 N. H. 19 ; 2 American Reports, 58. Rev. Code, § 2607. The right to recover for use and occupation is based no an implied agreement to pay a *quantum valebat*. 7 Ala. 817. The relation of landlord and tenant, within the meaning of rent attachment law, then arises. 6 Ala. 620 ; 21 Ala. 745 ; 17 Ala. 314. The first alleged breach constitutes no ground of recovery. 16 Ala. 765. Having the right to recover for use and occupation, Olive was a creditor of Adams, and the evidence shows he removed crops without paying rent, &c. ; therefore Adams could recover. *Kirksey* v. *Jones*, 7 Ala. 622. Under the Code, the defendant cannot put in issue the " cause for which the attachment issues ; " but any other matter which he can raise on the trial of the suit constitutes no breach of the bond. 38 Ala. 381. The relation of landlord and tenant is not one of the causes which authorize the attachment, although it must be shown to authorize an attachment for rent. 17 Ala. 314. The non-existence of this relation was a good defence in the attachment suit, and could have been set up there.

WOOD, PUGH, and BAKER, *contra*.

BRICKELL, C. J. — The rule of the common law is, that a mere wrongful resort to legal process affords no ground of action. To support an action for the misuse or abuse of process, malice, and a want of probable cause, must concur. *McKellar* v. *Couch*, 34 Ala. 336 ; *Benson* v. *McCoy*, 36 Ala. 710. This rule probably subserves the ends of justice as to common law remedies, or the ordinary remedies pursued in courts of justice. An attachment is an extraordinary remedy, prescribed by the statute for extreme cases, and harsh in its operation. Its levy deprives the party against whom it issues as completely of the possession of his property, as the levy of final process founded on a final judgment. The nature of the remedy required that the party against whom it issues should have a more ample remedy against its misuse or abuse, than that which the common law afforded. The injury resulting from such misuse or abuse is more direct, and greater in degree, than that which follows the misuse or abuse of common law process, or of ordinary remedies. These do not authorize the seizure of property, nor do they involve imputations affecting more or less reputation and credit. Hence, the statutes of this State have always required, as a condition precedent to the suing out of an attachment, bond with sufficient security, in a pen-

alty of double the amount of the demand sued for, conditioned for the payment to the defendant of all such damages as he may sustain from the wrongful or vexatious suing out of the attachment. On this bond, the statute gives the defendant a right of action, at any time within three years of the suing out of the attachment, before or after the attachment suit is determined, for the recovery of actual damage, if the attachment is wrongfully sued out, and vindictive damages, if sued out maliciously, as well as wrongfully. R. C. §§ 2992, 2993.

The statute carefully defines specific causes, or particular grounds or facts, which will authorize this remedy. If no one of these exists, the attachment is wrongfully sued out, and the plaintiff is liable for the actual injury sustained, though he acted from the purest motives, and had probable cause for believing facts existed, which justified a resort to the remedy. 1 Brick. Dig. 168, § 208. The statutes thus protecting the defendant against the misuse or abuse of the process, to avoid the delays incident to the introduction of collateral issues, not involving the merits of the controversy, and to give the suit the form, character and operation of an ordinary suit, commenced by personal service of process, prohibit the denial, or putting in issue the cause for which the writ issued. R. C. § 2992. The action on the bond, for the recovery of damages, being a plenary remedy for all the injury which could result, if the cause did not exist.

This action is founded on an attachment bond, and the complaint avers only a wrongful, not a vexatious, suing out of the writ, and seeks a recovery of actual damages only. The writ issued on the ground that the defendant was the tenant of the plaintiff, and had removed from the rented premises a portion of the crop grown thereon, without paying the rent, and without the consent of the plaintiff. The statute gives the " landlord a lien on the crop grown on rented land for the rent for the current year," and authorizes an attachment as a remedy for the enforcement of the lien. R. C. §§ 2961–2963. An affidavit of the special facts, and a bond as in other cases, is required as a condition on which the attachment may issue.

It is insisted by appellants that, on the trial of the attachment suit, the defendant therein could have denied or put in issue, the existence of the relation of landlord and tenant, averred in the affidavit, and the fact that there was not rent due or accruing. As these facts could have been put in issue, in the attachment suit, their non-existence does not authorize a recovery in this action. The cause for which an attachment issues, that cannot be made an issuable fact in the attachment suit, is not the relation existing between the plaintiff and the defendant, whether that relation is of landlord

[Tucker v. Adams.]

and tenant, or of debtor and creditor — nor is it the existence of the debt averred. The relation and the debt may exist, without the existence of any cause for the attachment. The cause of attachment, is the state of facts which entitle a party having a debt to resort to this remedy. In this particular case, the cause of attachment, was the removal from the rented premises, of the crop, or a portion thereof, grown the current year, without the consent of the landlord, and without the payment of the rent. This cause could not be put in issue on the trial of the attachment suit. If it did not exist in fact, the plaintiff could still prosecute his suit to judgment, leaving the defendant to controvert by an action on the bond the truth of this cause, and if untrue, to recover such damages as he suffered from the resort to the attachment. On the trial of the attachment suit, it was matter pleadable in bar, that the relation of landlord and tenant did not exist, and of consequence there was no rent accruing or due to the plaintiff, which could be recovered in that suit, or in a suit commenced in the ordinary mode. If there is not a debt due or owing from the defendant to the plaintiff in the attachment, the attachment wrongfully issues, and the condition of the bond is broken, entitling the defendant to nominal, if there is no actual damage. *Lockhart* v. *Woods*, 38 Ala. 631, and cases there cited.

The charge given by the court, to which an exception was reserved, and the charges refused, involve the same question. The proposition affirmed by the appellants, is, that the relation of landlord and tenant, exists between the vendor and vendee of real estate, when the vendee enters into possession, under an executory contract of purchase, and fails to make payment of the purchase-money at the time specified, and is liable for rent thereafter. The statement of the proposition, is its refutation. The relation of landlord and tenant subsists by virtue of an agreement, express or implied. The relation of vendor and vendee, is wholly different in its incidents, and in the rights of liabilities of the parties. If the vendor has not parted with the legal title, and the vendee fails to pay the purchase-money, he has three remedies, all of which he may pursue at the same time, and cannot be compelled to elect between them. He may maintain ejectment on his legal title, — sue at law for the recovery of the purchase-money, — and proceed in equity for the enforcement of his lien for the purchase-money. *Haley* v. *Bennett*, 5 Port. 452; *Duval* v. *McLoskey*, 1 Ala. 708. If he has parted with the legal title, the vendee could not by possibility be treated as his tenant. If he has not parted with the legal title, treating the vendee as his tenant, liable for rent, would operate a destruction of the contract of purchase, and the substitution of a different contract the

VOL. LII.

parties did not make. Nor can it be said, that the vendor, because of the vendee's default in payment of the purchase money, has an election to rescind the contract of purchase, and treat the vendee as a tenant. It requires the concurring minds of both parties, to rescind as well as to make a contract.

The statute authorizing an attachment for rent, is framed in almost the identical language, certainly in language of the same signification, as the statute, giving a landlord a lien for rent, in priority of an execution against a tenant, levied on goods and chattels, found on the rented premises in possession of the tenant. R. C. § 2878. Each statute contemplated a tenancy from year to year, springing out of contract. It would scarcely be contended a vendor because of the vendee's default in the payment of the purchase-money, could assert the statutory lien as against an execution creditor of the vendee.

The result is the judgment of the circuit court; must be affirmed.